Ex parte BODROG.
No. 17647.

District Court, E. D. Michigan, S. D.
Sept. 28, 1931.

Catherine G. Herlehy, of Detroit, Mich., for petitioner.

Julian G. McIntosh, Asst. U. S. Atty., of Detroit, Mich.

TUTTLE, District Judge.

This is a petition filed by Michael Bodrog, an alien, for a writ of habeas corpus, on the ground that the petitioner is unlawfully restrained by the United States immigration officials at Detroit. Proofs have been taken, which included a transcript of the hearing accorded to the petitioner before the immigration officials prior to the filing of this petition. It appears that the basis of the imprisonment of which the petitioner complains is an order of the United States Commissioner General of Immigration directing his deportation to Canada, the country whence he came to the United States, on several grounds; that on which the government apparently now relies being that he entered the United States without having obtained the immigration visa required by law.

The record includes the following findings of fact made by the immigration inspector having supervision in the matter:

"Michael Bodrog is an alien, namely a native and citizen of Czecho-Slovakia, who landed in Canada, Ex-Steamship 'Montrose' at Quebec on July 26, 1928 at which time he was destined to Canada. On August 2, 1929 the alien, while a resident of Windsor, Ontario, Canada, proceeded to Bob-Lo Island situated in the Detroit River, said Island being Canadian territory, for the expressed purpose of seeking entry into the United States in violation of law. At that time said Michael Bodrog, prior to his departure from Windsor, Ontario, Canada had entered into an agreement with persons unknown, to violate section 8 of the Immigration Act of February 5, 1917 [8 USCA § 144]. That in pursuance of this plan or scheme the alien did proceed from Windsor, Ontario, Canada, to Bob-Lo Island together with co-conspirators and was upon arrival at Bob-Lo given a transportation ticket, reading 'From Bob-Lo Island to Detroit, Michigan', by one of the co-conspirators.

"It appears from the testimony of Immigrant Inspector Leslie L. Lewis that the alien when about to board the Excursion Steamer bound for Detroit at Bob-Lo Island upon being questioned as to his right to enter the United States stated that he had left Detroit for Bob-Lo that morning, August 2, 1929, and after a temporary sojourn at Bob-Lo Island was now returning to his home in Detroit. He further claimed to have been previously lawfully admitted at the Port of Detroit and in support of his claim that he had left Detroit for Bob-Lo Island that day he presented a return portion of travel 'good for one way passage between Bob-Lo Island and Detroit'. In the absence of documentary evidence of his lawful admission Inspector Lewis, having some doubts as to the veracity of the alien's statements, referred the alien to U. S. Immigrant Inspector Hodgins, who upon completion of his official duties at Bob-Lo Island was returning to his official station at Detroit, and requested that the alien's claim to previous residence be verified from the records on file at the Port of Detroit.

"The alien admits during the course of the hearing held at Detroit August 9, 1929 that he left Windsor, Ontario, Canada for Detroit via Bob-Lo Island for the express purpose of seeking to effect unlawful entry into the United States, and that prior to his departure from Windsor, Ontario, Canada he had entered into an agreement with certain persons to effect the object. The alien further stated that he had agreed to pay the sum of $80.00 to the unknown co-conspirator upon his safe arrival in Detroit.

"It appears that upon arrival at Detroit on August 2, 1929, no record of the alien's admission could be found at the Port of Detroit and the alien was thereupon returned to Windsor, Ontario, Canada via the same transportation line that brought him to Detroit, namely the Detroit and Windsor Ferry Company. Inasmuch as the alien at the time he was questioned by U. S. Immigrant Inspector Leslie L. Lewis at Bob-Lo Island claimed to have been lawfully admitted to the United States at Detroit and that he had left Detroit for Bob-Lo Island that day and was now

seeking to return to his home he had every right to proceed to Detroit for the purpose of having his claim to previous lawful admission verified from the official records on file at that port. At no time did the alien express his unwillingness to proceed to that point for the purpose indicated. Nor did he at any time prior to boarding the vessel at Bob-Lo Island for Detroit retract his claim to residence in the United States.

"It will be noted from the record of hearing, dated August 9, 1929 that the alien's return to Canada was in accordance with the rules and regulations and the alien admits that he was returned to Canada that day by an Immigrant Inspector of the United States. Sometime, thereafter, for reasons unknown, the Canadian Immigration officials returned the alien to the United States and it was thereupon that deportation proceedings were instituted."

I am satisfied by the evidence, and I find, that the foregoing findings are in all respects true and correct; that the petitioner has received a full and fair hearing both before the immigration officials and in this court; that he was found in the United States after having entered without the required visa and in violation of law; and that he has no cause to complain of the order of deportation just mentioned.

It is claimed by the petitioner that he was forcibly brought into the United States from the island of Bob-Lo, Canada, by a United States immigration inspector, and that therefore he should not be deported but should be permitted to voluntarily leave the United States and be treated as having been excluded from this country. I have carefully considered all of the evidence and am fully convinced that this claim of the petitioner is not in accordance with the facts, and that, although he was accompanied by the inspector in boarding the boat at Bob-Lo and in coming to Detroit, he was not then in custody and was under no coercion or restraint until after he had voluntarily and illegally entered the United States at Detroit and had been there arrested for deportation. It is true that the inspector suspected the falsity of the petitioner's statements concerning his status and right to enter this country, and that he therefore kept the petitioner under surveillance until investigation of such statements could be made, with the result that upon becoming satisfied of such falsity he was able to, and did, promptly take the necessary steps to enforce deportation. The claim, however, on the part of this alien that he was brought into the United States by one of its officials, while ingenious, is, I am convinced by the record, as false as were the statements by which he sought to deceive the immigration officials into the belief that he was entitled to enter the United States.

It was further alleged by the petitioner in his petition for a writ of habeas corpus that he is an American citizen, and some argument to that effect is advanced by his counsel. This claim, however, is conclusively refuted by the evidence, which shows beyond any doubt that he is an alien, a subject of Czecho-Slovakia.

Having given careful consideration to the entire record and to the briefs and arguments submitted thereon, I reach the conclusion that the petitioner is not entitled to the relief sought, and that his petition should be denied. An order to that effect will be entered.